# Staunton

ROY W. GALE AND ETHEL M. GALE V. DOROTHY M. WILBER.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Eastwood D. Herbert,* for the plaintiffs in error.

*Vivian L. Page* and *H. O. Stickney,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grew out of an automobile accident which happened in Norfolk county, just outside of the Norfolk city line.

The defendant in error, Dorothy M. Wilber, was the plaintiff in the trial court. She instituted suit claiming damages for personal injuries and obtained a verdict against the plaintiffs in error, who were defendants in the trial court, for damages in the sum of $7,500, which verdict was reduced by the court to $5,000, and judgment was entered thereon on December 8, 1932. Plaintiff accepted the reduction in the amount of the verdict, but under protest, and excepted to the judgment and ruling of the court.

On June 11, 1932, between ten-thirty and eleven o'clock, P. M., the plaintiff was riding in a car owned by Roy W. Gale, the defendant, and operated by Ethel M. Gale, the defendant, his wife. Plaintiff was seated on the left hand rear seat of the Ford sedan, which was occupied by two other ladies besides the driver of the car. These were Mrs. Temple Cook, seated on the right rear seat by the side of the plaintiff, and Mrs. L. M. Payette, seated on the front right seat with the defendant, Ethel M. Gale, who was driving the car. These three ladies were visiting in the home of Ethel M. Gale earlier in the evening of June 11th and Mrs. Gale asked them if they would like to go with her to meet her husband about ten-thirty or eleven o'clock that night. It seems that her husband works for the Chesapeake and Ohio Railway Company and she had to go to meet him at the boat landing. She did not relish going alone, hence her invitation to these ladies to accompany her. They wished to make another call, which they did; Mrs. Gale, driving by the home where they were calling, blew her horn and they came out and started on the trip referred to. They went west on Simpson street to Fairview avenue, or boulevard. The boulevard runs nearly north and south. Simpson street is fifty feet wide, but only the southern portion of it is macadamized and this portion is twenty feet wide. The travel, of

course, was on this macadam portion. The street ends at Fairview boulevard. The latter is a wide and much traveled thoroughfare between Ocean View and the city of Norfolk, through the center of which runs the right of way of the Virginia Electric and Power Company, which has its tracks projected along this right of way. The macadam portion of Simpson street ends where it strikes the boulevard at a place opposite a crossing over the car tracks. The northern portion of the boulevard is sixteen feet wide and is the traveled portion of the boulevard for those going north to Ocean View. Just beyond this part of the boulevard, approaching the crossing, is an asphalted incline extending up to the first rail of the north bound track of the street railway. There is a conflict in the evidence as to just where on the macadam portion of Simpson street Mrs. Gale was driving. The weight of the testimony rather justifies the conclusion that she was driving further to the left of the road than she should lawfully have been. She approached the boulevard at a rate of speed of about twenty miles per hour and when she reached it she paused or slowed up, having seen the lights of a car which appeared to be rapidly approaching the intersection. She crossed the sixteen foot portion of the boulevard and when the front wheels of her car were on the first rail of the north bound track of the street railway it was struck on the extreme rear of the left hand fender by a Chevrolet automobile, which was driven by a boy seventeen years old, named Ernest Lyons, but which was owned by a Mr. Beck. The impact forced the Gale car a short distance up the track to a point on the track near a crossing sign post, the car coming to rest on the eastern track facing southwardly. The Chevrolet car went about half a block on the boulevard before it was stopped.

The plaintiff, Mrs. Wilber, sustained injuries which were quite serious, consisting in part of four fractured ribs and a punctured lung, from which she was confined in a hospital for some eighteen days and to her bed at her home for several weeks afterward.

The testimony as to some important facts, including the

distance of the Chevrolet car from Mrs. Gale's car when she saw, by its lights, that it was approaching the intersection, the exact position of Mrs. Gale's car when it was struck, the speed of the Chevrolet car and whether its driver had sufficient room to turn to his right, out Simpson street, and avoid the injury, or whether there was sufficient street room for him to have passed Mrs. Gale's car without striking it, is quite conflicting. A significant part of the testimony tending to confirm the contentions of the defendants is the admission of the boy that his car was skidding at the time of the accident and that he lost control of it. The case, however, was a typical one for the decision of a jury upon proper instructions by the court.

The question of the status of the plaintiff toward the defendants is controverted sharply and becomes very important in determining the measure of care due the plaintiff by the defendants and their duty to her in legal intendment, and upon this determination depends the question of the correctness of the instructions granted by the trial court. The assignments of error involve these considerations, among some others which we shall not discuss.

The plaintiff contends that she was a passenger in the defendants' automobile and therefore the high degree of care fixed by law was due her, or less negligence upon the part of the defendants would make them liable, than if she were simply a guest of Mrs. Gale while riding in the automobile. The defendants take the position that Mrs. Wilber was a guest and that being true only gross negligence upon their part would warrant any recovery against them.

The term "passenger," in its legal sense, imports some contractual relation between the parties. As to the meaning of the term "guest," there is some contrariety of expression and opinion among the decisions of those states which have dealt with the relation involved in the term.

The Massachusetts court, in our opinion, has evolved the soundest interpretation of its meaning. In the case of *Massaletti* v. *Fitzroy*, 228 Mass. 487, 118 N. E. 168, L. R. A. 1918C, 264, Ann. Cas. 1918B, 1088, a guest claimed to be a

passenger as she was riding at the invitation and for the accommodation of the owner of the automobile. The court held that she was a guest. In the case of *Flynn* v. *Lewis,* 231 Mass. 550, 121 N. E. 493, 494, 2 A. L. R. 896, the defendant asked a friend to accompany his daughter to a city to help the latter purchase a coat. The friend was killed on the way. The court held that there was an absence of any contractual relation between the parties which would take the case out of the guest rule. The lower court declined to instruct the jury that such a service was a consideration for the ride. The appellate court affirmed the judgment, saying: "The element of any pecuniary benefit or gain to the defendant being absent, the transaction was gratuitous, under which he is liable only for gross negligence in the operation of the automobile."

In the case of *Jacobson* v. *Stone,* 277 Mass. 323, 178 N. E. 636, 637, the court held that where the plaintiff was driven to Boston by the defendant to whom the former was to make a loan and was injured in the automobile on the way to get the money from her bank, there could be no recovery without gross negligence being shown: "The loan was gratuitous and created no contractual obligation between the parties beyond the obligation of the defendant to repay the money. The evidence was insufficient to indicate any more than the friendly relations, or the sense of mutual obligation, arising between kindred. A benefit, though measurable in money, resulting from such relation, or sense of obligation, is not hire."

It is to be noted that the defendant, Mrs. Gale, and the plaintiff, Mrs. Wilber, resided at the same house or apartment house; that their relations were friendly; that Mrs. Wilber did not have a car and often drove with Mrs. Gale, at times for her own pleasure and at other times for the accommodation of Mrs. Gale. The three occupants of the car, beside Mrs. Gale, on the night of the accident, had been in Mrs. Gale's home. There they were invited to go with her for the purpose of meeting her husband. They must have readily assented to the proposition for at the time they went

to pay another call where they were intercepted by Mrs. Gale, and they responded to the sound of her horn and accompanied her on the trip. It was doubtless a pleasant prospect to take an automobile ride at ten-thirty at night on the 11th of June, when the weather is usually warm.

There appears to be nothing in these relations and conditions to create any contractual relations between these ladies and Mrs. Gale which would take the case out of the guest doctrine which this court has laid down in the case of *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77, and the case of *Jones* v. *Massie,* 158 Va. 121, 163 S. E. 63.

 One of the assignments of error is that the court erred in granting plaintiff's instructions A, B, C, F and H.

"Instruction No. A.—The court further instructs the jury that under the law it is reckless driving to drive to the left of the center of the street and if you believe from the evidence that the defendant, Mrs. Gale, drove to the left of the center of the street then she was guilty of negligence and if you believe that such negligence was a proximate cause of plaintiff's injury then you should find for the plaintiff, against Mr. and Mrs. Gale, but this instruction must be read in connection with instructions 1 and 2."

This instruction correctly defines "reckless driving," in the terms of the statute but it was error to give it in this case.

In the case of *Morris* v. *Dame's Ex'r,* 161 Va. 545, 171 S. E. 662, 671, in which it was said: "But 'reckless driving,' as used in that act, was not used with reference to the law of torts, and whether an act or omission which is a violation of this statute constitutes recklessness (in the sense of wantonness) within the purview of the law of torts depends upon the facts and circumstances of the case, and not upon its classification in this statute under the class denominated 'reckless driving.'"

The statute referred to, of course, is the "uniform act regulating the operation of vehicles on highways" (Acts 1926, chapter 474, as amended). It will be noted that this

instruction tells the jury that it must be read in connection with instructions 1 and 2. Those instructions are as follows:

"Instruction No. 1.—The court instructs the jury that if they believe from the evidence that Mrs. Wilber was an invited guest and not a passenger for a consideration the right of Mrs. Wilber to recover from the defendants Roy W. Gale and Ethel M. Gale is based upon her ability to prove by a preponderance of the evidence, that Mrs. Gale was guilty of gross, wanton, or culpable negligence, and that such negligence, if any, was the proximate cause of the accident or contributed thereto. You are further instructed that Mrs. Gale is presumed to be free from any negligence whatever, and the mere happening of the accident raises no presumption of negligence on her part, and before you can find for Mrs. Wilber against Roy W. Gale and Ethel M. Gale you must first believe by a preponderance of the evidence and by positive and affirmative proof, and not by mere speculation or conjecture, that Mrs. Gale was guilty of gross, wanton, or culpable negligence which was the direct and proximate cause of the accident."

"Instruction No. 2.—The court instructs the jury that when a person rides as a guest in an automobile, that person assumes all risks ordinarily incident thereto; that the driver owes such guest the duty of not knowingly or wantonly adding to these perils which may ordinarily be expected and in this case you are instructed that you cannot find against Roy W. Gale and Ethel M. Gale unless you believe by a preponderance of the evidence that Mrs. Gale knowingly or wantonly added to the ordinary risks assumed by Mrs. Wilber, or was guilty of culpable or wanton negligence which was the proximate cause of the accident, or contributed thereto."

The question is whether the reference to these two instructions cures the vice of the instruction under consideration. We do not think so. We think the bare reference without more in explanation of the court's action tended to confuse the jury.

"Instruction No. B.—The court further instructs the

jury that it was the duty of the defendant Mrs. Gale to keep a proper lookout and if you believe from the evidence that she failed to keep a proper lookout then she was guilty of negligence and if you believe such negligence was the proximate cause of the injury then you should find for the plaintiff against the defendants Gale, but this instruction must be read in connection with instructions 1 and 2."

This instruction is erroneous, we think, for there is no evidence upon which to predicate it. There is no evidence that Mrs. Gale was not keeping a proper lookout.

"Instruction No. C.—The court further instructs the jury that it was the duty of the defendant to keep her car under complete control at all times under every condition and if you believe from the evidence that the defendant, Mrs. Gale, failed to keep her car under complete control then she is guilty of negligence and if you believe that such negligence was a proximate cause of her injury then you should find for the plaintiff, but this instruction must be read in connection with instructions 1 and 2."

We think this instruction is erroneous, first because there is no evidence that Mrs. Gale did not keep her automobile under proper control. In the second place, its conditions are impossible of performance. No human being can keep his automobile in complete control while it is in motion. So many conditions may suddenly come into being, not capable of being foreseen, that complete control is impossible of attainment. There should have been some appropriate modification of the instruction. The reference to the two instructions above referred to does not meet the objections.

"Instruction No. F.—The court further instructs the jury that if you believe from the evidence that the plaintiff was injured as result of the concurring negligence of the defendants your verdict should be for the plaintiff against all of the defendants, but this instruction must be read in connection with instructions 1 and 2."

This instruction should have been clarified in its connection with instructions 1 and 2. This not having been done,

it is subject to the criticism of being misleading and confusing. It constitutes error.

"Instruction No. H.—The court instructs the jury that the driver of an automobile owes to the guest riding therein the duty to exercise ordinary care not to increase the danger, or add a new one to those she assumed on entering the car, and while the same high degree of care may not be demanded as by a passenger who pays for her ride, yet the guest has the right to demand of the driver that a lookout be kept, that an excessive speed shall not be maintained and that the laws of the road be observed, these duties being required for the safety of everyone, those within as well as those without the automobile, and the abilities to perform which duties depend solely upon the will of the driver rather than upon experience or acquired skill, and the omission to perform these duties plainly increases the danger which the guest assumed upon entering the automobile and adds new ones."

All of the conditions of this instruction might be breached and the party breaching them would not be guilty of gross negligence under the principles announced in *Boggs* v. *Plybon, supra,* and *Jones* v. *Massie, supra.*

The other instructions granted by the court do not cure the errors pointed out in connection with the above instructions.

We cannot say that the errors were not prejudicial. The presence or absence of gross negligence is a question for the jury upon proper instructions.

In accordance with the views herein expressed, we reverse the judgment of the trial court and remand the case for a new trial to be had in accordance with this opinion.

*Reversed and remanded.*