S. M. HALE v. W. B. HALE.

(Filed 26 February, 1941.)

**1. Automobiles § 19—**

Under the provisions of the Virginia statute, sec. 2154 (232), Acts of Virginia General Assembly, 1938, a passenger in an automobile is a guest without payment unless there is some contractual relationship between the parties under which the passenger was obligated to pay for the transportation, or unless the transportation was contractually for the mutual benefit of both the passenger and the operator.

**2. Same—**

Where a passenger in the automobile owned and operated by his son on a trip to visit a relative, voluntarily pays the cost of gasoline on the trip, the father is a guest without payment for such transportation within the purview of sec. 2154 (232), Acts of Virginia General Assembly, 1938, since the father was not under any contractual obligation to pay for the gas and oil.

**3. Same—**

In order for a gratuitous guest to recover of the owner or operator of a car for negligent injury under the Virginia statute, sec. 2154 (232), Acts of Virginia General Assembly, 1938, he must show such gross negligence or willful and wanton misconduct on the part of the owner or operator as would raise the presumption of conscious indifference to consequences.

**4. Same—**

Evidence that the owner and operator of an automobile was driving 40 or 45 miles an hour on a winding road on a clear, dry day and that on a particularly bad "S" curve he lost control of the car, which ran off the road resulting in injury to a guest without pay, *is held* insufficient to show gross negligence on the part of the driver, and the driver's motion to dismiss as of nonsuit in an action governed by the Virginia law was properly allowed.

APPEAL by plaintiff from *Rousseau, J.,* at September Term, 1940, of SURRY. Affirmed.

Plaintiff, the father of the defendant, was, on 8 January, 1939, a passenger on the automobile of defendant on a trip into the State of

Virginia to visit a relative.   At a point between Radford and Christians-
burg, the automobile, which was being operated by defendant, ran off the
road and down a fill.   As a result plaintiff sustained certain personal
injuries.

Thereafter, plaintiff instituted this action to recover damages alleging
certain negligent conduct on the part of the defendant in the operation
of the car.   In the complaint no reference was made to the point of the
accident.

Defendant, answering, denies negligence and pleads sec. 2154 (232),
Acts of Virginia General Assembly, 1938.   Plaintiff filed a reply thereto
in which he denies that said statute or the decisions thereunder have any
application, "for that plaintiff was not a guest of the defendant, with-
out pay."

The accident is described by plaintiff as follows:

"Approaching the point where the car went off of the road there was
quite a curve in the road to the left; it is what we call an 'S' curve, and
there was a bridge there over a creek, and the road then curves again as
it goes on to Christiansburg.   The car ran off the road on the left-hand
side the way it was going, and went down a fill about 25 feet, landing
at the bottom   .   .   .   He was driving around 40 to 45 miles an
hour.   He had driven about 25 yards beyond the bridge when the
car ran off the road.   The road enters that bridge on a slight curve
and after you get to the end of it there is a curve   .   .   .   I don't
know just the exact distance, but I expect it was 150 yards from
the point where he entered the curve until the car ran off the fill   .   .   .
The road was winding and curving all the way from Fancy Gap to the
place of the wreck except for short straight stretches, but I believe the
curve we had the accident on is worse than any of the others we had
passed that morning   .   .   .   The day was clear and the road was dry,
.   .   .   The first thing I noticed about the movement of the car just
before the wreck it looked like there was some irregularity in the move-
ment of the car.   The car was not operating just right.   My son, who
was driving, got to jerking the steering wheel backward and forward, and
the first thing you knew over we went.   The direction of the car had to
change when he was jerking the steering wheel backward and forward.
The jerking of the steering wheel started after the car began to get off
its course, and that was the cause of it I reckon   .   .   .   After I noticed
that something was wrong the car went over pretty soon.   I thought my
son was a little excited, but except for the excitement he was in complete
possession of his faculties as far as I could tell at the time."   The de-
fendant testified: "I tried to control the direction of the car after some-

thing seemed to go wrong . . . I could not control the car. I don't know whether the front wheels of the car responded to the turning of the steering wheel or not; we just went over."

At the conclusion of the evidence on motion of the defendant, the court entered judgment dismissing the action as of nonsuit. Plaintiff excepted and appealed.

*Folger & Folger for plaintiff, appellant.*
*Woltz & Barber for defendant, appellee.*

BARNHILL, J. Section 2154 (232), Acts of Virginia General Assembly of 1938, provides that a person transported by the owner or operator of a motor vehicle as a guest without pay for such transportation is entitled to recover damages against such owner or operator for injuries to the person or property of such guest resulting from the operation of such vehicle only upon proof that the injury "was caused or resulted from the gross negligent or wilful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." The statute makes a distinction between the social or invited guest and the commercial or business passenger. The motorist who transports for pay or some other direct benefit is accountable as at common law, while the "host" who transports his "guest without payment for such transportation" is liable only for injuries caused by his gross negligence or willful or wanton misconduct.

The passenger is "a guest without payment for such transportation" when there is no contractual relationship between the parties under which the passenger was obligated to pay for the transportation and there are no sufficient facts to show that the transportation was contractually for the mutual benefit of both the passenger and the operator. *Master v. Horowitz,* 262 N. Y., 609, 188 N. E., 86, 95 A. L. R., 1182. It does not include persons who are being transported for the mutual benefit of both the passenger and the operator or owner of the car. However, the extent and nature of the reciprocal advantages which will exclude the passenger are not unlimited but are confined to certain definite relations, such as Master and Servant, and to tangible benefits accruing from the transportation—as in saving time for which he, as master, pays—facilitation of a servant's work, or the like. *Kruy v. Smith,* 144 Atl., 304; *Sullivan v. Richardson,* 6 Pac. (2d), 567; *Crawford v. Foster,* 293 Pac., 841 (Cal.); *Master v. Horowitz, supra; Chaplowe v. Powsner,* 175 Atl., 470 (Conn.), 95 A. L. R., 1177.

The fact that the person who is carried voluntarily pays for the gas and oil and other running expenses of the trip without being under any

7—219

contractual obligation so to do is insufficient to show that the passenger is not a guest within the meaning of the statute. 4 Bashfield, 87, sec. 2293; *Perkins v. Gardner*, 191 N. E., 350 (Mass.); *Master v. Horowitz, supra.*

Thus, the evidence is insufficient to take the plaintiff out of the provisions of the Virginia guest statute and to show that he was a passenger for hire. The facts in the present case depict, at most, a situation of reciprocal hospitality between members of the same family—that of the car extended by the son and that of the payment of the cost of gasoline by the plaintiff. It is barren of such definite relations, contractual or otherwise, and of such tangible mutual benefits as the statute contemplates in order to remove the plaintiff from the status of a guest and the consequences attaching thereto. Manifestly, there was no charge made by the defendant for the transportation of his father and the purchase of the gasoline was not intended by the father as an obligatory payment for services rendered. Doubtless the suggestion that there was a formal contract for transportation under which compensation was to be charged by the son and paid by the father would have met the displeasure of both at the time, and until self-interest of the plaintiff intervened. *Chaplowe v. Powsner, supra; McQuire v. Armstrong*, 255 N. W., 745, Anno. 95 A. L. R., 1180.

Plaintiff, being a guest without the payment for such transportation, to recover, must offer proof either of gross negligence or of willful and wanton misconduct. Gross negligence, as used in the statute, is elaborately defined in *Altman v. Aronson*, 231 Mass., 588, 121 N. E., 505, 4 A. L. R., 1185.

This definition has been quoted and approved by the courts of Virginia. *Thomas v. Snow*, 174 S. E., 837; *Young v. Dyer*, 170 S. E., 737; *Margiotta v. Aycock*, 174 S. E., 831 (Va.); *Boggs v. Plybon*, 157 Va., 30, 160 S. E., 77; *Jones v. Massie*, 158 Va., 121, 163 S. E., 63; *Osborn v. Berglund*, 159 Va., 258, 165 S. E., 410; *Collins v. Robinson*, 160 Va., 520, 169 S. E., 609; *Yonker v. Williams*, 192 S. E., 753 (Va.). Briefly, it is that degree of want of care which would raise the presumption of conscious indifference to consequences. It is the conduct of a person who is wantonly neglectful of the consequence of his acts, showing little or no regard for the effect upon the rights of others.

To make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. *Boggs v. Plybon, supra; Massaletti v. Fitzroy*, 228 Mass., 487.

To hold that a guest who, for his own pleasure, is driving with his

host may recover from him for injuries suffered where there is no culpable negligence, shocks one's sense of justice. The driver is often not an expert and makes no implied representation beyond these, namely; that he will not knowingly or wantonly add to those perils which may ordinarily be expected and that there are no known defects in the car which makes the operation particularly hazardous. *Boggs v. Plybon, supra; Jones v. Massie, supra.*

In *Young v. Dyer, supra,* in which the facts are very similar, the Court said: "A mere failure to skilfully operate an automobile under all conditions or to be alert and observant and to act intelligently and to operate an automobile at a lawful rate of speed, may or may not be a failure to do what an ordinarily prudent person would have done under the circumstances and thus amount to lack of ordinary care; but such lack of attention and diligence or mere inadvertence does not amount to wanton or reckless conduct or constitute culpable negligence for which defendant would be responsible to an invited guest."

The operation of an automobile at an excessive rate of speed by an inexperienced, unskillful and incompetent person 17 years of age who, by reason of his inexperience, lack of skill and incompetency, lost control of the car which leaves a pavement and goes into a ditch, does not constitute gross negligence. *Naudzius v. Lahr,* 234 N. W., 581 (Mich.), 74 A. L. R., 1189.

Measured by the standard prescribed by these and many other cases of the courts of Virginia and of other states having a similar statute, the evidence offered by the plaintiff fails to show more than the want of ordinary care on the part of the defendant.

As the evidence offered, considered in the light most favorable to the plaintiff, is not sufficient to establish gross negligence the defendant's motion to dismiss as of nonsuit was properly allowed.

Affirmed.